EDWARD J. HUGHES, Plaintiff in Error, *vs.* JOHN E. TRAE-GER *et al.* Defendants in Error.

*Opinion filed October 16, 1914.*

1. CIVIL SERVICE—*stenographer in classified service of city does not hold his position by contract.* A stenographer in the classified service of a city holds his position by virtue of appointment and not by contract, and it is within the power of the legislature to provide that a certain per cent of his salary shall be withheld each month and paid into a pension fund for city civil service employees.

2. SAME—*Civil Service Pension Fund act applies only to those holding permanent positions.* The Civil Service Pension Fund act of 1911 (Laws of 1911, p. 158,) applies only to those holding permanent positions in the city civil service, and such positions, whether called offices or places of employment, have substantially the same characteristics, without regard to the character of the services rendered.

3. SAME—*Civil Service Pension Fund act does not deprive employees of property.* The Civil Service Pension Fund act of 1911, (Laws of 1911, p. 158,) in authorizing the deduction of the monthly salaries of city employees, does not deprive such employees of their property, as they have no property in their unearned salaries; and this is true although the employees acquire no vested interest in the fund created by the act.

4. SAME—*Civil Service Pension Fund act does not make unreasonable discrimination.* The Civil Service Pension Fund act of

1911 is not invalid as making an unreasonable discrimination between different classes of employees, in that laborers are excluded unless they desire to participate, as are also employees over sixty years of age at the time the law went into effect who had not been in the service of the city ten years.

5. Same—*what not ground for holding Civil Service Pension Fund act invalid.* The Civil Service Pension Fund act of 1911 can not be held invalid upon the alleged grounds that the effect of the act is to, appropriate public money to private use and to allow extra money to public officers for services already performed.

6. Same—*Civil Service Pension Fund act is not invalid.* The Civil Service Pension Fund act of 1911 is not invalid because it applies only to cities exceeding 100,000 in population, nor upon the alleged ground that the title does not sufficiently describe the purposes of the act.

Writ of Error to the Circuit Court of Cook county; the Hon. Adelor J. Petit, Judge, presiding.

J. Ambrose Gearon, for plaintiff in error.

William H. Sexton, Corporation Counsel, (Howard W. Hayes, Clarence N. Boord, John W. Beckwith, and I. T. Greenacre, of counsel,) for defendants in error.

Mr. Justice Dunn delivered the opinion of the court:

The circuit court of Cook county sustained a demurrer to a bill in chancery and dismissed it for want of equity. A constitutional question being involved, the complainant has sued out a writ of error from this court.

The object of the bill was to have declared unconstitutional the act of the General Assembly approved May 31, 1911, providing for the formation and disbursement of a pension fund for civil service employees in cities, villages and towns having a population exceeding 100,000. (Laws of 1911, p. 158.) The act provides for the establishment and maintenance of a pension fund for civil service employees, to be derived chiefly from the retention or deduction by the comptroller of the municipality of two dollars

a month from the salary or wages of each employee. The act went into effect on July 1, 1911, and the bill was filed on July 10, 1911, on behalf of all others similarly situated as well as the complainant. It averred that the complainant was, and had been for about two years last past, a stenographer in class 1, grade "B," in the civil service of the city of Chicago, holding his position by virtue of the Civil Service act; that by an ordinance passed about January 1, 1911, the compensation to be paid for his services as such stenographer was fixed at $80 a month for the year 1911; that he had been continually since the passage of the ordinance rendering the services required of him in his position, and that the city comptroller and city treasurer were threatening, by the authority of the act in question, to deduct from his salary, as well as the salary of all others on whose behalf the bill was filed, two dollars a month. The bill prayed for an injunction to prevent this deduction.

The nature of the office or position held by the complainant, the character of his employment and the kind of work he does have been stated as fully as they are stated in the bill. By whom he was appointed, the kind of services he has rendered as a stenographer, whether he was appointed by virtue of an ordinance establishing an office, or by a resolution authorizing his employment, or some other authority, his bill does not disclose. It is argued, on the one hand, that he is an officer of the city whose office is subject to the control of the legislature, which may change the compensation or abolish the office; on the other, that he is an employee having a contract with the city for at least a year, which is protected against legislative interference or change by the constitutions of the State and the United States.

It is not material whether the complainant was an officer or an employee of the city, for under the Civil Service act and the Pension Fund act in question his relation to

the city would be substantially the same in either case. All the offices and places of employment in the city classified by the civil service commissioners, it is provided by section 3 of the Civil Service act, shall constitute the classified civil service of the city, and all appointments to or removals from such offices or places of employment are subject to the regulations of that act. By section 1 of the Pension Fund act its provisions do not apply to temporary or probationary employees or to laborers, except, in case of the latter, upon their request. It applies, therefore, only to those holding permanent positions, and those positions, whether called offices or places of employment, have substantially the same characteristics, without regard to the character of the services rendered. "An office is a public station or employment conferred by the appointment of government. The term embraces the ideas of tenure, duration, emolument and duties. The employment of the defendant was in the public service of the United States. He was appointed pursuant to law and his compensation was fixed by law. Vacating the office of his superior would not have affected the tenure of his place. His duties were continuing and permanent—not occasional or, temporary. They were to be such as his superior in office should prescribe. A government office is different from a government contract. The latter, from its nature, is necessarily limited in its duration and specific in its objects. The terms agreed upon define the rights and obligations of both parties, and neither may depart from them without the assent of the other." (*United States* v. *Hartwell*, 6 Wall. 385.) This language was used in a case holding that a clerk in the office of the assistant treasurer of the United States was an officer of the United States.

The bill states that the complainant was employed in the civil service of the city, but necessarily, under the provisions of section 10 of the Civil Service act, he was appointed by some appointing officer acting under some au-

thority derived from the city council. By virtue of that appointment, and without regard to any agreement or contract, the complainant was entitled to hold his position and receive its emoluments until discharged for cause in the manner prescribed by the Civil Service act, but he was not bound to perform the duties of his position for any length of time. He would violate no obligation by leaving the service of the city at any time. There were no terms of service agreed upon. The respective rights and obligations of the city and the complainant were not fixed by contract but by law and the action of the council authorizing his appointment. He did not hold his position or perform its duties by virtue of any contract. He had no property right either in his position or the salary attached thereto, and no right to compensation growing out of any contractual relation. His position was subject to the same legislative control as may be exercised over any public office. Offices created by statute are wholly within the control of the legislature, which may at pleasure create or abolish them, modify their duties, shorten or lengthen their terms, increase or diminish the salary or change the mode of compensation; and the power of municipal corporations, within the limits prescribed by the constitution or by statute, is of the same absolute character. *Donahue* v. *County of Will*, 100 Ill. 94; *People* v. *Loeffler*, 175 id. 585; *People* v. *City of Chicago*, 242 id. 561.

The effect of the law was to reduce the salary which the complainant would receive, two dollars a month, but he was not thereby deprived of his property, for he had no property in his unearned salary. It is true that the complainant acquires no vested interest in the fund created by the statute, for there is no contract by the State or the city that the disposition of the fund may not be changed in the future, and in such event the complainant's expectancy might be destroyed. The two dollars a month deducted from the pay of each employee does not become the

property of such employee and cannot be controlled or disposed of by him. The fund created by these deductions remains subject to the disposition of the legislature, and the employees cannot prevent its appropriation in another way than that designated by the statute. It is not their property, and the statute does not amount to a contract by the State to use it in the manner provided by the statute. A change in the disposition of the fund would not, however, violate any right of the complainant, for until the happening of the event designated by the statute for its distribution he has no vested right in the fund but only an expectancy created by the law, which the law may revoke or destroy. *Pennie* v. *Reis,* 132 U. S. 464; *State* v. *Trustees,* 121 Wis. 44.

It is insisted that the act discriminates unreasonably between different classes of employees who are subject to its requirement, in that laborers are excluded unless they desire to participate, as well as employees over sixty years of age at the time the law went into effect who had not been in the service of the city for ten years. Under section 6 of the Civil Service act laborers may be removed without written charges or hearing, and it seems reasonable, therefore, that they should not be required to contribute to the pension fund unless they desired to. The other exception is not unreasonable, for in inaugurating the system it was necessary to take into consideration the situation of those employees who by reason of their age would have little or no prospect of being able to comply with the requirements of the act so as to derive any benefit from the fund. While mathematical equality was impossible to attain, we cannot say that the line of division between those who should and those who should not participate was not reasonably drawn.

It is argued that if the money retained be regarded as public money the act is void as an appropriation of public money for private use and allowing extra money to public officers for services already performed. In *Firemen's*

*Benevolent Ass'n* v. *Lounsbury,* 21 Ill. 511, it was held that the raising of funds for the relief of the distressed, sick, injured or disabled members of the Firemen's Benevolent Association of Chicago and their immediate families was a public charity for which the legislature could make provision. Judge Dillon, writing of pensions for municipal services, in his work on Municipal Corporations, (vol. 1, sec. 430, 5th ed.) says that these annuities "are, in effect, pay withheld to induce long-continued and faithful service, and the public benefit accrues in two ways: First, by encouraging competent and faithful employees to remain in the service and refrain from embarking in other vocations; and second, by retiring from the public service those who, by devoting their best energies for a long period of years to the performance of duties in a public office or employment, have by reason thereof or of advanced age become incapacitated from performing the duties as well as they might be performed by others more youthful or in greater physical or mental vigor." In *Commonwealth* v. *Walton,* 182 Pa. 373, legislation like that in question was sustained against a similar objection. The purpose of the legislation is within the constitutional power of the General Assembly.

The act is not invalid because applying only to cities exceeding 100,000 in population, and the title sufficiently describes the purpose of the act. The word "pensions," as used in the section quoted from Dillon on Municipal Corporations and in many judicial opinions, describes payments to retired public officers and employees of the character of those mentioned in the body of the act, and its use for that purpose in the title of the act is in accordance with the recognized usage of writers, speakers and lexicographers.

The bill was without equity and the demurrer was properly sustained.                              *Decree affirmed.*