[Civil No. 2443.   Filed March 1, 1926.]

[243 Pac. 919.]

PINAL COUNTY, ARIZONA, Appellant, v. A. T. HAMMONS, Superintendent of Banks of the State of Arizona, and B. F. THUM, Special Deputy Superintendent of Banks of the State of Arizona, Appellees.

1. TAXATION.—Money representing personal property taxes, collected and deposited in bank by county assessor, are "public moneys" belonging to county, within Penal Code of 1913, section 441.

2. BANKS AND BANKING—COUNTY ENTITLED TO PREFERENCE OF CLAIM AGAINST INSOLVENT BANK FOR PUBLIC MONEYS DEPOSITED BY ASSESSOR (CIV. CODE 1913, PAR. 4872; PEN. CODE 1913, § 439,

(SUBD. 4).—In view of Civil Code of 1913, paragraph 4872, and Penal Code of 1913, section 439, subdivision 4, deposit of public moneys by county assessor was special one for safekeeping, or, if treated as general deposit, was unlawful, and county, in either case, is entitled to preference of its claim therefor on bank's insolvency.

3. CONTRACTS.—Existing statutes when contract is made become part of it.

4. BANKS AND BANKING—DEPOSIT BY COUNTY ASSESSOR HELD SUFFICIENTLY IDENTIFIED TO ENTITLE COUNTY TO PREFERENCE OF ITS CLAIM THEREFOR.—County assessor's deposit of money and checks, drafts, etc., converted into money by bank, which mingled all with its other funds, thereby enhancing its apparent assets, *held* sufficiently identified to entitle county to preference of its claim therefor on bank's insolvency.

5. BANKS AND BANKING—COUNTY ASSESSOR'S CHECK TO TREASURER HELD NOT TO AFFECT COUNTY'S RIGHT TO PREFERENCE OF CLAIM FOR DEPOSIT IN INSOLVENT BANK ON WHICH DRAWN.—That county assessor gave county treasurer a check, which was never cashed, for taxes collected, did not affect county's right to preference of its claim for assessor's deposit of tax moneys in insolvent bank, on which drawn.

6. DEPOSITARIES.—Depositary Law (Civ. Code 1913, pars. 4637–4655) does not change law as to keeping of public funds by county assessor and other officers than state and county treasurer.

---

See (1, 2) 7 C. J., p. 633, n. 16; 37 Cyc., p. 1205, n. 30 New. (3) 7 C. J., p. 634, n. 20; 13 C. J., p. 560, n. 37, p. 561, n. 38. (4) 7 C. J., p. 752, n. 81. (5) 7 C. J., p. 634, n. 20, p. 751, n. 78. (6) 18 C. J., p. 580, n. 33. 36 Cyc., p. 1103, n. 92.

APPEAL from a judgment of the Superior Court of the County of Pinal. W. R. Chambers, Judge. Judgment reversed and cause remanded, with instructions.

Mr. E. W. McFarland, County Attorney, and Mr. E. P. Patterson, Special Counsel, for Appellant.

Mr. D. L. Cunningham, for Appellees.

---

3. See 6 R. C. L. 855.
4. See 26 R. C. L. 1348, 1354.

ROSS, J.—In the year 1923 the county assessor of the plaintiff county carried an account in his official capacity with the Pinal Bank & Trust Company, a banking institution doing a general banking business at Florence, the county seat of said county. On the eleventh day of May of that year, the bank, being insolvent, was taken over with all its assets and property by the defendant, A. T. Hammons, superintendent of banks. At the time there was deposited to the credit of the assessor, as such, the sum of $6,752.81, of which $5,421.73 represented personal property taxes collected by said assessor during the month of April and $1,331.08 during the month of May, 1923. On May 7th, being the first Monday of that month, the assessor in settlement with the county treasurer of Pinal county gave the latter his check on the bank for the taxes collected by him for the month of April; but this check was not presented for payment and was not paid. After the superintendent of banks took the bank into possession, the assessor filed with him in form a preferred claim for the whole amount of the deposit, and it was allowed as a general claim. When the bank was closed on May 11th, it had on hand assets amounting to $13,026.80, which with all other assets was turned over to the superintendent of banks. There have been allowed and paid out from the cash on hand preferred claims in the sum of $1,505.49. This suit by the county was brought to enforce its claim as a preference.

The above statement contains all of the ultimate facts necessary to a decision of the question presented. The trial court denied the county a preference. From this judgment the county has appealed, claiming it was legally entitled on the facts to have its claim preferred over other creditors.

The moneys in question were "public moneys" belonging to the county. Section 441, Penal Code. This is not and cannot be questioned. The assessor was only the agent of the county for the purpose of collecting and keeping the taxes in the manner prescribed by law. His duty in that regard, so far as personal property taxes are concerned, is generally prescribed in paragraph 4872, Civil Code of 1913, one provision of which reads as follows:

"The assessor, on the first Monday of each month, must make a settlement with the county treasurer and pay into the county treasury all moneys collected by him for such taxes during the preceding month."

There is no statutory provision allowing or authorizing the assessor to make any other disposition of the public moneys than to pay them over to the county treasurer. However, there is contained in the Penal Code, § 439, a penalty for making other disposition of them; the relevant parts of such section being:

"Every officer of the state or of any county, city, town or district of this state, and every other person charged with the receipt, safekeeping, transfer or disbursement of public moneys, who either:

"(1) Without authority of law, appropriates the same, or any portion thereof, to his own use, or to the use of another; or,

"(2) Loans the same, or any portion thereof; or,

"(3) Fails to keep the same in his possession until disbursed or paid out by authority of law; or,

"(4) Without authority of law deposits the same, or any portion thereof in any bank or with any banker or other person; but he may deposit the same on special deposit for safe keeping; . . .

"Is punishable by imprisonment," etc.

The above section (with some immaterial changes so far as the question here involved is concerned) was taken from California and has been construed in

that state in connection with an unauthorized bank deposit of public moneys by the state insurance commissioner. The court there said:

"Counsel differ as to whether the answer shows that the deposits were placed to the credit of defendant individually or as a public officer; and the question is of importance in the case (*Estate of Arguello,* 97 Cal. 196, 31 Pac. 937), provided defendant was permitted by law to make an ordinary deposit of the funds in bank at all. But, in our opinion, he was not. If such deposits are allowed, the title to the money passes to the bank, and the transaction is nothing more or less than a loan, with a special provision implied that repayment shall be made as demanded by the checks of the depositor. *Janin* v. *Bank,* 92 Cal. 14, 27 Pac. 1100 [14 L. R. A. 320, 27 Am. St. Rep. 82]; *Yarnell* v. *City of Los Angeles,* 87 Cal. 603, 608, 25 Pac. 767; Boone, Banking, Secs. 39–41. By the provisions of section 424, Pen. Code, each officer of this state charged with the receipt, safe-keeping, transfer, etc., of public moneys, 'who either . . . (2) loans the same or any portion thereof, . . . or (3) fails to keep the same in his possession until disbursed or paid out by authority of law; or (4) unlawfully deposits the same, or any portion thereof, in any bank, or with any banker or other person; . . . is punishable by imprisonment,' etc. The moneys deposited by defendant in this instance were undoubtedly public moneys (Pen. Code, Sec. 426); and such deposits were in contravention of the spirit, if not the letter also, of each of the said subdivisions of section 424, and were thus unlawfully made (Civ. Code, Par. 1667). It may be said that subdivision 4 contains an implied recognition of deposits in a bank which may be lawful. So it does, but, for the purposes of a case like the present at least, that subdivision should be understood in connection with the preceding prohibition of loans generally. It is not probable that the legislature intended to allow loans by way of general deposit in banks, while forbidding all others." *People* v. *Wilson,* 117 Cal. 242, 49 Pac. 135.

The difference in subdivision 4 of our section and subdivision 4 of the California section only emphasizes the denial of a right to make a general deposit of public moneys in a bank by an officer of the county in that our legislature specifically limits the right to deposit to a "special deposit for safekeeping."

It is not suggested nor contended that the assessor left said funds with the bank as a special deposit for safekeeping, or that the bank's officers so accepted the funds. The only deduction is that unless the law itself makes such deposit a special one for safekeeping it was unlawful. In other words, notwithstanding the assessor and the bank treated it as a general deposit, it was in law a special deposit for safekeeping, since both the assessor and the bank knew that was the only kind of a deposit by the assessor sanctioned by the law. The county, the owner of the moneys, was not concluded by the act of its agent, because such act was without authority of law and unlawful. Its moneys could legally be deposited by the assessor only specially for safekeeping, and the bank was charged with knowledge that it could accept such moneys only for that purpose. The assessor could not pass title to the bank; in fact, was forbidden to do any act tending in that direction or likely to have that effect.

In *In re Bank of Nampa,* 29 Idaho 166, 157 Pac. 1117, under a statute making it unlawful for an officer of the state, county, city, etc., to deposit public moneys in any bank "otherwise than on special deposit, or as otherwise provided by law," it was held that a general deposit of such moneys in a bank became a trust fund and no part of the estate of the bank, and in case of insolvency of the bank its receiver must treat such fund as the property of the true owner and not of the bank. In *In re Fidelity State Bank,* 35 Idaho 797, 31 A. L. R. 781, 209 Pac. 449, the

Nampa case was approved and followed; the court saying:.

" . . . The moneys of the district, illegally deposited in the bank upon general deposit, remained the property of the district, and the title did not pass to the bank, neither did the relationship of debtor and creditor arise between the bank and the district. . . . When these funds were deposited with the bank by the treasurer of the district, a contract of special deposit was made; the district being a municipal corporation . . . had the power to make this particular contract and none other."

The reasoning employed and conclusion reached are logical and unanswerable. The universal rule is that the existing statutes at the time a contract is made become a part of it and must be read into it. 6 R. C. L. 855, § 243.

"The bank received it [funds] as a trust fund *nolens volens,* and the principles of equity relating to trusts [funds] fully apply to it. It is a leading principle of equity jurisprudence that 'wherever a duty rests upon an individual, in the absence of all evidence to the contrary, it shall be presumed that he intended to do right rather than wrong; to act conscientiously rather than with bad faith; to perform his duty rather than to violate it.' " *Fogg* v. *Hebdon,* 80 Miss. 750, 32 South. 285.

But if the deposit be treated as general (which in fact it was) and not special, we arrive at the same result. If it was a general deposit, it was an unlawful deposit because forbidden by law.

"Where the law prohibits the deposit of specific public funds in banks, it is held by the courts that it is unlawful for the bank to accept the same; that the title to such deposits does not pass to the bank; and, in case of the insolvency of the bank, such deposits shall be allowed as preferred claims and paid in full by the receiver." *City of Sturgis* v. *Meade County Bank,* 38 S. D. 317, 161 N. W. 327.

In *Yellowstone County* v. *First Trust & Sav. Bank,* 46 Mont. 439, 128 Pac. 596, in speaking of a situation like this one, the court said:

"The bank was an active participant in the wrong, and the result follows, as of course, that as to such excess the bank held it as a trustee *ex maleficio,* for the use and benefit of the county."

Since the title to the moneys deposited with the bank did not pass and the relation of creditor and debtor did not arise, it follows that the bank took possession thereof as a trustee in favor of the true owner, and the superintendent of banks is affected by the same trust and is in duty legally bound to account therefor to the *cestui que trust.*

It is shown by the record that the deposit consisted of money and paper representing money, such as checks and drafts, which were converted into money by the bank, and that it was all mingled with the other funds of the institution and enhanced its apparent assets. This, we think, is sufficient identification. It is not necessary that the identical money, checks or drafts deposited be in the hands of the trustee; it being sufficient if it be shown that their substituted value was commingled with and augmented the assets of the insolvent. 26 R. C. L. 1348, 1354, §§ 214, 218; *Yellowstone County* v. *First Trust & Sav. Bank, supra; State* v. *Bruce,* 17 Idaho 1, 134 Am. St. Rep. 245, L. R. A. 1916C 1, 102 Pac. 831.

The check to the county treasurer covering the taxes collected during the month of April does not affect the situation. If the deposit was a special deposit for safekeeping, it was not subject to be checked out. On the other hand, if we regard it as a general deposit it was unlawfully made and was just as much the county's property as if it had been a special deposit for safekeeping. In neither case could the assessor affect the ownership by checking against the fund.

He had no more right to dispose of the fund or transfer it by check than he did to make a general deposit. The situation might be different had the check actually been paid to the treasurer and by him deposited under the provisions of the depositary law.

We think the county's claim of preference is fully sustained by the law and that the court erred in not so holding.

In *In re Central Bank of Willcox* v. *Lowdermilk,* 23 Ariz. 574, 205 Pac. 915, it was held by this court that if public moneys of the state were deposited in the designated depositary under the depositary law, the state was not entitled to a preference over the other creditors of an insolvent bank. But in that case the deposit was authorized by statute and was lawfully made.

The Depositary Law (title 44, Civil Code) is confined to prescribing the duties and rights of the state treasurer and county treasurers in the handling and disposition of the public moneys in their hands, and it does not undertake to change or modify the law prescribing the duties of other officers who receive public funds as to how they shall keep such funds.

The legislature perhaps ought to change the law so as to permit all public officers whose duty it is to receive public moneys to deposit the same generally with legally qualified depositaries, thus changing the present law which requires certain of them to keep the public moneys in safes or vaults at their own risk, or to make special deposits for safekeeping. However that may be, the courts have no alternative but to follow the law as it is now written.

The judgment is reversed and the cause remanded, with directions that judgment be entered in accordance with this opinion.

McALISTER, C. J., and LOCKWOOD, J., concur.