O. H. GALL, *Receiver, v.* CITY OF WHEELING *et al.*

(CC 577)

Submitted April 20, 1937. Decided June 15, 1937.

*Carl B. Galbraith,* for plaintiff.

*Jay T. McCamic, Russell B. Goodwin, Benj. L. Rosenbloom, Carl O. Schmidt* and *Frank A. O'Brien,* for defendants.

RILEY, JUDGE:

This is the suit in equity of O. H. Gall (successor to C. E. Lawhead), receiver of State Bank & Trust Company, a corporation, against The City of Wheeling, a municipal corporation, defendant, and The Board of Trustees of the Policemen's Pension or Relief Fund of the City of Wheeling and the Board of Trustees of the Firemen's Pension or Relief Fund of the City of Wheeling, intervening defendants. The demurrers to the answer

and cross-bill of The City of Wheeling and the petitions of the intervenors were overruled. The circuit court, on its own motion, certified its ruling on said demurrers.

The purpose of this suit, as indicated in the bill of complaint, is to require The City of Wheeling to account to the receiver of said State Bank & Trust Company, which closed its doors on January 27, 1933, for certain stocks and bonds of the value of about $120,000.00, theretofore hypothecated by the bank in accordance with a contract, as provided by statute, to secure the deposits of The City of Wheeling. The bill of complaint alleges that on January 27, 1933, at the time of its closing said State Bank & Trust Company had three accounts, to-wit, one in the name of "City of Wheeling, W. D. Robertson, Treasurer," in the amount of $729.29; a second account in the name of "Regular Account, City of Wheeling, W. D. Robertson, Treasurer," in the amount of $2,677.29; and the third a certificate of deposit issued to "W. D. Robertson, Treasurer of the City of Wheeling," in the amount of $9,665.92, all of which deposits aggregated $13,072.50. The bill of complaint then sets forth in detail the shares of stock and bonds and the par value thereof so hypothecated by said bank with said City. The prayer is that The City of Wheeling be required (1) to account for the stocks and bonds not sold by it; and (2) to make payment to the plaintiff of the proceeds of stocks and bonds sold over and above $13,072.50, the alleged amount of the city's deposits at the time the bank was closed by the State Banking Commissioner.

In its answer and cross-bill, the defendant city alleges, among other things, that the three accounts of the city set forth in the bill of complaint amount to $13,081.90, and in addition thereto, its treasurer, on January 27, 1933, had also on deposit in said bank two other accounts, bringing the total amount to $110,492.47, namely, one for $62,087.74, in the name of "City of Wheeling, Policemen's Pension or Relief Fund, W. D. Robertson, Treasurer," and, the other in the amount of $35,322.82, in the name of "City of Wheeling, Firemen's Pension or Relief Fund, W. D. Robertson, Treasurer."

Said answer and cross-bill and the intervening petitions aver, in effect, that some years prior to 1916, the Council of The City of Wheeling had adopted two ordinances, each similar in character, one to provide for a policemen's pension or relief fund and for the levy of taxes to sustain such fund, and the creation of a Board of Trustees for its administration, and the other, in a similar way, to provide for a firemen's pension or relief fund; that said ordinances were amended and reenacted on July 23, 1916; that each of said ordinances provides for the creation of a Board of Trustees which shall be a corporation, and which, by its corporate name, is authorized to sue and be sued, plead and be impleaded, contract or be contracted with, take and hold real estate and personal estate of its funds, and may have and use a common seal; that said Boards of Trustees shall consist of the chief executive official of The City of Wheeling and four members of the police or fire departments, as the case may be; that the Council of The City of Wheeling shall levy annually, in the manner provided for other municipal levies, a tax of one cent on each one hundred dollars of all real and personal property as listed for taxation in The City of Wheeling for said policemen's pension or relief fund, and a like levy for said firemen's pension or relief fund; that no tax of less than one per cent shall be so levied unless fixed and admitted by said Boards of Trustees and certified to said council; that there shall be deducted from the monthly pay of each member of the police and fire departments of said city a monthly sum which sum shall become a regular part of said pension funds; that the treasurer of The City of Wheeling shall be the custodian of the funds and shall deposit and pay out of the same in accordance with any proper orders, which treasurer shall be liable for said fund on his official bond; that payments of pension money shall be made to each member of the police and fire departments who has become disabled or who, after continuous service during a certain number of years, may come and upon his application be retired from all service.

The answer and cross-bill and intervening petitions further aver that the ordinances were adopted in accordance with the provisions of the laws of the State of West Virginia; that levies were laid regularly and turned over to the treasurer of the city; that the members of the police and fire departments contributed monthly to the proper fund, the monthly contributions being, by The City of Wheeling, deducted from the monthly pay of each member, and likewise turned over to said treasurer; that the city council had, on July 24, 1917, enacted an ordinance providing for the deposit of public moneys in a bank, or banks, furnishing security and offering the highest rate of interest; that on July 18, 1927, after said city advertised for bids as provided by law, for the deposit of its public moneys, bids of several banking institutions in said city were submitted to the city council; that said State Bank & Trust Company submitted the highest bid, which was accepted by council; that thereupon the council directed that the public moneys of the city be deposited in said bank in accordance with its bid; that on February 14, 1928, the city treasurer made four separate deposits, two of which were the pension funds aforesaid, totaling $79,083.11; that at the time of making said deposits the bank delivered to the city a surety bond in the amount of $100,000.00 to protect said deposits; that, as the deposits increased, and particularly when the total thereof reached a point where they exceeded the sum of $100,000.00, the bank in addition to said bond, deposited with the city, for protection and safety of said funds, collateral in the nature of stocks and bonds; that in 1932, the surety bond, which had been renewed from year to year, was not renewed and in lieu thereof the bank pledged assets which were represented to be worth something more than the entire amount of the deposits.

Said answer and cross-bill and intervening petitions further aver that after the bank closed and prior to the appointment of a receiver, a representative of the State Banking Commissioner advised the Mayor-Manager and the City Treasurer that said Banking Commissioner had consented to the sale of about $66,500.00 worth of securi-

ties theretofore pledged; that $36,500.00 worth thereof were sold and the remainder, to-wit, $30,000.00 of the State of West Virginia State Road Bonds, were taken over by the city and the two Boards of Trustees, at the prevailing market price, and carried thereafter as an investment; and that the accounts in the bank and in the hands of the receiver were and are public moneys.

On demurrers, the pleadings of the defendant and intervenors are challenged on two general grounds, namely, (1) that the funds created under the ordinances for the maintenance of the firemen's and policemen's pension funds are not public funds, in that a portion of the same was raised through assessments against the individual fireman's or policeman's salary; and (2) that, in any event, such funds cannot be considered municipal funds, in that separate corporate entities have been set up for the administration and control of said funds.

Three questions are certified to this court: (1) whether or not the funds, described in the pleadings, deposited with the State Bank & Trust Company were or are public funds; (2) whether or not the funds, described in the pleadings, deposited with the State Bank & Trust Company, were and are public funds of The City of Wheeling; and (3) whether or not The City of Wheeling was authorized to make deposit or deposits of the firemen's and policemen's pension or relief funds and to secure a pledge of securities from the depository to secure the same.

The primary and most important question arising upon this certificate is whether or not these two funds are public funds of The City of Wheeling. If they are, and The City of Wheeling was authorized to make the deposits with the bank and to receive a pledge of securities to secure the same, clearly the Circuit Court was justified in overruling the demurrers.

As disclosed by the pleadings, the money constituting the two funds was raised (1) by tax levies laid by the Council of The City of Wheeling in pursuance of statute; and (2) by monthly assessments deducted from the pay of each member of the police and fire departments. There-

fore, it is unnecessary for us to decide what law should govern this case in the event a part of the funds were derived from gifts and fines.

Are the funds in question public funds? As to that part which was raised by levy of the Council of The City of Wheeling there can be no question. Necessarily and essentially they are public funds. *Ayers et al.* v. *Lawrence et al.*, 59 N. Y. 192, 198; *Pinal County* v. *Hammons, etc., et al.*, 30 Ariz. 36, 243 P. 919.

But counsel for the plaintiff says that the part of the funds derived from the assessment on the members are funds set aside for the benefit of the members, and therefore are private funds. This position ignores the manner in which the assessments were made and their purpose. The fact that part of the funds was derived from deductions from the monthly payments of the members of the two departments does not divest the entire, or any part, of the funds of its public character. *Pennie* v. *Reis*, 132 U. S. 464, 10 Sup. Ct. 149, 33 L. Ed. 426; *Hughes* v. *Traeger*, 264 Ill. 612, 106 N. E. 431; *State* v. *Board of Trustees*, 121 Wis. 44, 98 N. W. 954; *Burke* v. *Board of Trustees*, 4 Cal. App. 235, 87 P. 421. The reasoning which underlies these authorities is that the members of the fire or police departments of municipal corporations have no interest in the fund until the contingency provided for in the establishment of the pension actually happens. A municipal corporation is simply a creature of statute. Their charters are not contracts but are granted for public purposes. At all times they are subject to be amended or repealed within the discretion of the legislature. *Probasco et al.* v. *Town of Moundsville*, 11 W. Va. 501. The members of the two departments have no contract with The City of Wheeling which would be binding beyond legislative control. They are employees of the municipal corporation, subject to the law of the state. *Prichard* v. *De Van*, 114 W. Va. 509, 172 S. E. 711. Their interest in the fund accrues only upon the happening of a contingency contemplated in the provisions of the ordinance establishing the pensions. The monthly assessments constitute moneys raised by taxation. *Ab initio* these

moneys are public moneys. They are withheld by the city and placed into the pension funds for the benefit of the members of the two departments. Under the Code, 1931, 8-6-14, a member of the department, in case he should be discharged or voluntarily leave the service without receiving the benefit of said pension fund, could withdraw all sums assessed against and collected from him, together with accrued interest thereon. That right, however, did not alter the character of the funds. Always there is the constitutional right of the legislature to withdraw the whole or any part of the funds from the purposes for which they were created. *Pennie* v. *Reis, supra.* Equally, the legislature had the right, as it did, to take away from the members the privilege to withdraw any part of the funds for their own use. Acts of the West Virginia Legislature, 1935, Chap. 69, sec. 14. This legislative right is fundamental; it is constitutional in its very nature; and it cannot be gainsaid at this late date in the development of the constitutional law of this country. 54 A. L. R. 943.

But, says plaintiff's counsel, if the two funds were public funds, they were not the public funds of The City of Wheeling. The fact that the Boards of Trustees of the two funds, by the ordinances, are created corporations with power to sue and be sued and to contract, etc., is stressed in support of the proposition that these funds belong to two separate entities and are not the funds of The City of Wheeling. In these modern times in American government, it is not unusual for governmental affairs to be carried on by governmental corporations. No one will contend that the funds of the various governmental corporations are not the funds of the governments creating them. No thoughtful lawyer would say that the funds of the State Road Commission of West Virginia are not funds of the State of West Virginia; yet under the statute, the State Road Commission is designated as a corporation with statutory power to sue, contract, etc. A good part of the funds of the national government have been allocated to various corporations. The funds allocated to the Home Owners Loan Corporation and

the Reconstruction Finance Corporation, and all such governmental corporations, are the funds of the national government. The formation of the corporations and the allocation of the funds to them is simply a convenient way for their handling.

Chapter 24 of the Acts of the Legislature, Extraordinary Session of 1932, provides that the Boards of Trustees of the two pension funds may loan said funds to the city. This provision does not render these funds private. In the first place, as the learned trial chancellor suggested in his opinion, this statute is subsequent in passage to the original statute under which the pension funds were created, and the passage of a subsequent statute does not necessarily change the effect of a former statute, and in any event, it is simply an authorization whereby the city could profitably make use of funds which otherwise would be required to lie dormant.

In the law of municipal corporations, it is axiomatic that the public weal is wrapped up with the honesty, integrity and efficiency of the members of the police and fire departments of municipalities. An underlying and salutary public policy dictates that a law, which has as its primary purposes the protection and betterment of the public service should be upheld as constitutional and construed in the light of the purposes for which it was enacted. The underlying purposes for the upholding of public pensions for municipal services are twofold: "First, by encouraging competent and faithful employees to remain in the service and refrain from embarking in other vocations; and, second, by retiring from the public service those who by devoting their best energies for a long period of years to the performance of duties in a public office or employment and, by reason thereof or of advanced years, become incapacitated from performing the duties as well as might be performed by others more youthful and in greater physical or mental vigor." Dillon, Municipal Corporations, 5th Ed., Vol. 1, section 430. See 6 McQuillin, Municipal Corporations, 2nd Ed., section 252. In *Hamilton* v. *The City of Charleston*, 116 W. Va. 521, 182 S. E. 575, this court upheld the

constitutional power of a municipal corporation to establish pension funds for the members of the fire department. In that case, this court said: "It cannot be gainsaid that a judiciously administered pension fund, such as here provided, will prove a potent agency in securing and retaining the services of the most faithful and efficient class of men for service in the fire department in any municipality." The same reasoning applies to pension funds for members of the police departments of municipalities. The underlying purpose which prompted the creation of the two funds in this case is the betterment of the public service in The City of Wheeling. That being so, they are public funds of the city.

The case of *Hamilton* v. *The City of Charleston,* supra, was cited by counsel for the plaintiff in support of the position that the raising of the funds by levy was unconstitutional in that the legislature had no right to delegate to the Boards of Trustees the right to make levies. This contention overlooks the fact that in the instant case, the statute does not delegate to the Board of Trustees of the two funds the right to make levies, but simply gives them the power to recommend to the council of the city to make a levy, in the event the amount of the levy desired is less than one per cent on each one hundred dollars of assessed property.

Code, 31-4-9, is relied upon in support of the proposition that the pledge of the securities in question for the purpose of securing the two pension funds is illegal. This section reads:

> "No banking institution shall pledge, hypothecate or deliver any of its assets of any description whatsoever to any person to indemnify him as surety for such banking institution, or as surety for any other person: Provided, That a bank or trust company may deposit securities to guarantee deposits of the United States, State of West Virginia, a county, district, school district or municipal corporation."

Because the two Boards of Trustees are, under the terms of the statute, designated as corporations, it is con-

tended the deposits of the pension funds are not deposits of The City of Wheeling, and therefore, inferentially, the pledge for the security of said deposits is illegal under this section of the Code. This contention has already been answered. The funds being public funds of The City of Wheeling, the hypothecation of the securities by the State Bank & Trust Company to secure them is in fact and in law a deposit of securities to secure The City of Wheeling, within the exception as to municipal corporations provided for in said section of the Code.

The defendants' position is strengthened by the fact that the funds are not deposited in the name of the Board of Trustees. On the contrary, the deposits are made: *"City of Wheeling,* Policemen's Pension or Relief Fund, W. D. Robertson, Treasurer," and *"City of Wheeling,* Firemen's Pension or Relief Fund, W. D. Robertson, Treasurer." (Italics supplied.)

Our holding in this case that these funds are public funds of The City of Wheeling is all-embracing of every other question raised by plaintiff's counsel. The questions of estoppel and whether the deposits are special or general or the funds trust funds have become moot. Indeed, any discussion of them in this case would be without profit. Under all the circumstances, we think that the circuit court did not err in overruling the demurrers to the answer and cross-bill of the defendant, The City of Wheeling and the intervening petition of the intervenors.

*Ruling affirmed.*