## THE WASHINGTONIAN HOME OF CHICAGO

### *v.*

## THE CITY OF CHICAGO.

*Filed at Ottawa October 11, 1895.*

1. CORPORATIONS—*distinction between private and public corporations.* A corporation composed of private individuals which is not by law restrained from conducting the corporate business for private benefit, which does not report to and is not inspected by any State official, which elects its own managers without State approval, and which, by law, owes the State no duty, is a private, and not a public, corporation.

2. SAME—*"Washingtonian Home of Chicago" a private corporation.* The Washingtonian Home of Chicago, which was created and its powers defined by the act of 1867, (1 Private Laws of 1867, p. 141,) is a private corporation.

3. CONSTITUTIONAL LAW—*provision of constitution as to donations to private corporations is self-executing.* The provision of the constitution of 1870 (No. 2 of separate sections) prohibiting municipalities from making donations to private corporations is self-executing, and the same operated as a paramount law from the time the constitution was adopted.

4. SAME—*said section repealed section 7 of act of 1867 incorporating Washingtonian Home.* Said constitutional provision repealed section 7 of said act of 1867, whereby the county of Cook and city of Chicago were required to pay ten per cent of liquor license fees to the Washingtonian Home, but did not operate retrospectively.

5. MUNICIPAL CORPORATIONS—*power of the city of Chicago to dispose of its revenues.* The revenues derived by the city of Chicago from licenses and other sources are held in trust, and can only be paid out or appropriated in the manner and for the purposes authorized.

6. ESTOPPEL—*definition of estoppel in pais.* Estoppel *in pais* is an indisputable admission, arising from the circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced, by the voluntary, intelligent action of the party against whom it is alleged, to change his position to his prejudice.

7. SAME—*city cannot estop itself to obey the constitution.* A city does not, by an appropriation and payment of its revenues for twenty-two years in violation of the constitution, estop itself to subsequently obey that instrument.

APPEAL from the Circuit Court of Cook county; the Hon. EDMUND W. BURKE, Judge, presiding.

M. B. & F. S. LOOMIS, for appellant:

The charter of the Washingtonian Home was a valid exercise of legislative power and discretion at the time it was granted, and was not repealed or annulled by separate section 2 of the constitution of 1870.   *Schall* v. *Bowman,* 62 Ill. 321; *Covington* v. *East St. Louis,* 78 id. 548; *Railroad Co.* v. *Pinckney,* 74 id. 277; *Middleport* v. *Insurance Co.* 82 id. 562; *Wright* v. *Bishop,* 88 id. 302; Cooley's Const. Lim. (6th ed.) 77; *Allbyer* v. *State,* 10 Ohio St. 588; *Lippincott* v. *Town of Pana,* 92 Ill. 24; *State* v. *Barbee,* 3 Ind. 258; *Evans* v. *Phillipi,* 117 Pa. St. 226; *State* v. *Thompson,* 2 Kan. 432; *Pecot* v. *Police Jury,* 41 La. Ann. 705; *Slack* v. *Railroad Co.* 13 B. Mon. 1; *State* v. *Macon County Court,* 41 Mo. 453; *Coal Co.* v. *Coal and Iron Co.* 37 Md. 557; *Indiana County* v. *Agricultural Society,* 85 Pa. St. 357; *Cass* v. *Dillon,* 2 Ohio, 607; *County of Allegheny* v. *Gibson,* 90 Pa. St. 397.

The Washingtonian Home is not a private corporation, within the meaning of the constitutional clause referred to.   *Railroad Co.* v. *Smith,* 62 Ill. 268; *Prettyman* v. *Tazewell County,* 19 id. 406; *Firemen's Benevolent Ass.* v. *Lounsbury,* 21 id. 511; *Johnson* v. *County of Stark,* 24 id. 75; *Perkins* v. *Lewis,* 24 id. 208; *Butler* v. *Dunham,* 27 id. 405; *Wetherell* v. *Devine,* 116 id. 631; *Taylor* v. *Thompson,* 42 id. 9; *County of McLean* v. *Humphreys,* 104 id. 378; *Mather* v. *Ottawa,* 114 id. 659; *County of Cook* v. *Industrial School,* 125 id. 540; *Burd's Orphan Asylum* v. *School District,* 90 Pa. 35; *Wagner* v. *Rock Island,* 146 Ill. 139; *Academy* v. *Philadelphia,* 150 Pa. 565; *Philadelphia* v. *Masonic Home,* 160 id. 572; *Gooch* v. *Association,* 109 Mass. 558; 2 Pomeroy's Eq. Jur. secs. 1019-1025; *Donahue* v. *Library Co.* 6 Pa. 306; *McDonald* v. *Hospital,* 120 Mass. 452; *Shepherd's Fold* v. *Mayor,* 96 N. Y. 137; *Speer* v. *School Directors,* 50 Pa. St. 150; *Brodhead* v. *Milwaukee,* 19 Wis. 624; *President* v. *Frick,* 34 Ill. 405; Cooley's Const. Lim. (6th ed.) 559, *et seq.*

The legislature having incorporated the Washingtonian Home as a public charity, had the right to endow it from the public treasury.   *Sawyer* v. *Alton,* 3 Scam. 127;

*Mason* v. *Waite,* 4 id. 134; *Munn* v. *People,* 69 Ill. 80; *Hawthorn* v. *People,* 109 id. 302; *Coles* v. *County of Madison,* Breese, 120; *People* v. *Wren,* 4 Scam. 269; *County of Richland* v. *County of Lawrence,* 12 Ill. 1; *People* v. *Power,* 25 id. 187; 1 Dillon on Mun. Corp. sec. 35; *People* v. *Moon,* 3 Scam. 125; *Gutzweller* v. *People,* 14 Ill. 142; *Dennis* v. *Maynard,* 15 id. 477; *County of Pike* v. *State,* 11 id. 202; *Sangamon County* v. *Springfield,* 63 id. 66; *Logan County* v. *Lincoln,* 81 id. 156; *Marion County* v. *Lear,* 108 id. 343; *Harris* v. *Supervisors,* 105 id. 445; *Firemens' Benevolent Ass.* v. *Lounsbury,* 21 id. 511; *Shaw* v. *Dennis,* 5 Gilm. 147; *County of McLean* v. *Humphreys,* 104 Ill. 378.

The legislation in question was a valid exercise of the police power of the State. 4 Chitty's Blackstone, 162; Cooley's Const. Lim. 203-704; *Hawthorn* v. *People,* 109 Ill. 302; *Dennehy* v. *Chicago,* 120 id. 627; *Wilson* v. *Trustees,* 133 id. 443; *Marion County* v. *Lear,* 108 id. 343; *Beer Co.* v. *Massachusetts,* 97 U. S. 25; *Thorpe* v. *Railroad Co.* 27 Vt. 140; *Ely* v. *Niagara County,* 36 N. Y. 297; *Darling* v. *New York,* 31 id. 164; *Donahue* v. *Philadelphia,* 2 Pa. St. 230; *Allegheny County* v. *Gibson,* 90 id. 397; *Kensington* v. *Philadelphia,* 13 id. 76; *Folsom* v. *New Orleans,* 28 La. Ann. 936; *Street* v. *New Orleans,* 32 id. 574; *Underhill* v. *Manchester,* 45 N. H. 215; *Chadbourne* v. *Newcastle,* 48 id. 196.

A license is not a tax; therefore the decisions holding that a corporate tax cannot be perverted from corporate purposes have no application. *People* v. *Thurber,* 13 Ill. 544; *East St. Louis* v. *Wehrung,* 46 id. 392; *East St. Louis* v. *Trustees,* 102 id. 489; *Lovingston* v. *Trustees,* 99 id. 564; *Craw* v. *Tolono,* 96 id. 261; *Insurance Co.* v. *Peoria,* 29 id. 180; *Firemens' Benevolent Ass.* v. *Lounsbury,* 21 id. 511; *Ducat* v. *Chicago,* 48 id. 172; *Walker* v. *Springfield,* 94 id. 372; *Gutzweller* v. *People,* 14 id. 142; *County of Pike* v. *State,* 11 id. 202; *County of Richland* v. *County of Lawrence,* 12 id. 1; *People* v. *Power,* 25 id. 187; *Supervisors* v. *Springfield,* 63 id. 66; *Benevolent Ass.* v. *Farwell,* 100 id. 197; *Dennehy* v. *Chicago,* 120 id. 627.

The city consented to the appropriation of the fund in question to the Washingtonian Home. *People* v. *Salomon,*

54 Ill. 41; *Railroad Co.* v. *Joliet,* 79 id. 39; *People* v. *Farnham,* 35 id. 562; *Railway Co.* v. *People,* 91 id. 255; *Railroad Co.* v. *Quincy,* 126 id. 498; *Roby* v. *Chicago,* 64 id. 447; *Railway Co.* v. *West Chicago Park Comrs.* 151 id. 204; *Booth* v. *Wylie,* 102 id. 106; *Martel* v. *East St. Louis,* 94 id. 69; *Searing* v. *Butler,* 69 id. 578; *Connett* v. *Chicago,* 114 id. 239; *Choisser* v. *People,* 140 id. 21; *Railroad Co.* v. *Sparta,* 77 id. 505; *County of Richland* v. *County of Lawrence,* 12 id. 1; *People* v. *Logan County,* 63 id. 374; *Gaddis* v. *Richland County,* 92 id. 119; *Valparaiso* v. *Gardiner,* 97 Ind. 1; *Owners of Lands* v. *People,* 113 Ill. 296; *Rumsey* v. *People,* 19 N. Y. 41; *People* v. *Maynard,* 15 Mich. 470; *People* v. *Lothrop,* 24 id. 235; *Strosser* v. *Fort Wayne,* 100 Ind. 451; *State* v. *Bunker,* 59 Md. 366; *Lanning* v. *Carpenter,* 20 N. Y. 447.

HARRY RUBENS, SIGMUND ZEISLER, and S. P. SHOPE, for appellee:

The Washingtonian Home is a private corporation. Morawetz on Private Corp. (2d ed.) secs. 3, 4; *Rundle* v. *Delaware Canal,* 1 Wall. C. C. 290; *Sweatt* v. *Railroad Co.* 3 Cliff. 339; Waterman on Law of Corp. sec. 17; *Louisville* v. *University,* 15 B. Mon. 642; *People* v. *McAdams,* 82 Ill. 356; *Cleveland* v. *Stewart,* 3 Kelly, (Ga.) 283; *Harwood* v. *Drainage Co.* 51 Ill. 130; *Harwood* v. *People,* id. 138; *Hessler* v. *Drainage Comrs.* 33 id. 105.

The constitution of 1870 repealed section 7 of the Washingtonian Home act. *Phillips* v. *Quick,* 63 Ill. 445; *State* v. *Maynard,* 14 id. 419; *Hills* v. *Chicago,* 60 id. 86; *Chance* v. *Marion County,* 64 id. 66; *Town of Concord* v. *Bank,* 92 U. S. 625; *County of Cook* v. *Industrial School,* 125 Ill. 540.

The legislature is powerless to impose a tax upon a city without its consent. A law creating a corporate debt without the consent of the municipality is unconstitutional. *Marshall* v. *Silliman,* 61 Ill. 218; *Choisser* v. *People,* 140 id. 21; *Railroad Co.* v. *Aurora,* 99 id. 205.

The elements of an estoppel against the city are entirely wanting. *Logan County* v. *Lincoln,* 81 Ill. 156; Bige-

low on Estoppel, (4th ed.) 445; 7 Am. & Eng. Ency. of Law, 17.

Mere recognition of a right does not result in estoppel. The other party must have been induced by such recognition to act to his prejudice. *Railroad Co.* v. *Joliet,* 79 Ill. 40; *Railway Co.* v. *People,* 91 id. 251.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

This was a petition for *mandamus,* brought by the Washingtonian Home of Chicago, against the city of Chicago, to compel the city to pay to the petitioner $25,000, —ten per cent of moneys received for licenses granted by the city for the right or privilege to sell spirituous liquors from January 1, 1893, to April 1, 1894. To the petition the city of Chicago interposed a general demurrer, which the court sustained and the petition was dismissed. To reverse the judgment of the circuit court the petitioner appealed.

The petitioner is a corporation organized under an act of the legislature approved February 16, 1867. That act was set out in the petition, sections 1 and 2 of which are as follows:

"SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That the Washingtonian Home Association of Chicago is hereby created, and declared to be a body corporate and politic, under the name of 'The Washingtonian Home of Chicago,' with power to sue and be sued, plead and be impleaded, contract and be contracted with; to take, by gift, grant, devise or otherwise, property, real, personal and mixed, and the same to hold, use, lease, convey, mortgage and otherwise dispose of, for the purposes hereinafter mentioned; to adopt and use a corporate seal, and alter the same at pleasure; also to erect and maintain such buildings and other fixtures and conveniences as may be

deemed requisite or necessary for the purposes of this corporation.

"Sec. 2. The object of this incorporation shall be the founding and maintenance of an institution for the care, cure and reclamation of inebriates."

Section 3 authorized the corporation to adopt such by-laws for the management of the institution as it thought proper.   Sections 4 and 5 are as follows:

"Sec. 4. Fifteen of the directors of said home, to be selected by lot, shall hold their office until the third Monday of January, A. D. 1869, and the remaining fifteen until the third Monday of January, A. D. 1871; and on the second Monday of January, A. D. 1869, and biennially thereafter, said corporation shall elect successors in place of those whose term of office shall expire the Monday thereafter, who shall, respectively, hold their offices for two years and until their successors shall have been elected; and in case of removal, death or resignation of any one or more of said directors or their successors before the expiration of their term of office, their place may be filled by said remaining directors, and such person or persons shall hold their office until the next biennial election. Seven of said directors shall constitute a quorum for the transaction of business.

"Sec. 5. Any person sentenced by the authorities of the city of Chicago to the bridewell or house of correction for intemperance, drunkenness, or for any misdemeanor caused thereby, may, with the consent of the proper officers of said Home, be received and detained as an inmate of said Home in lieu of the bridewell or house of correction, until the expiration of such sentence; and when any such person has been committed to the city bridewell or house of correction for any such misdemeanor caused by intoxication or for drunkenness, either justice of the police court may, with the consent aforesaid, cause him to be transferred to said Home for the unexpired term of sentence."

Section 7 provides : "It shall be the duty of the treasurer of the county of Cook and the treasurer of the city of Chicago, or of the officers of either into whose hands the same may come or be paid, to pay over to said corporation, in quarterly installments, for the support and maintenance of said institution, ten per cent of all moneys received for all licenses granted by authority of said county or city for the right or privilege to vend or sell spirituous, vinous or fermented liquors within the said county of Cook and city of Chicago." Section 7 was amended by an act in force July 1, 1883, providing that in no case shall the sum so paid for or during any one year exceed $20,000.

It is alleged in the petition that immediately after the act went into effect petitioner perfected its organization and at once proceeded to carry out the objects of its incorporation, and has continued its organization and continued to carry out the objects of its organization; that since its organization, up to the present time, petitioner has cared for and treated in its said institution not less than 18,000 inebriates, large numbers of whom have, by reason of such care and treatment, been cured, and reclaimed from their unfortunate habits of drunkenness and inebriety; that of the above number of inebriates so cared for and treated by petitioner, as aforesaid, a large number, to-wit, about 3865 thereof, were persons sentenced by the authorities of said city of Chicago to the bridewell or house of correction of said city for intemperance, drunkenness, or for misdemeanors caused thereby, who, with the consent of the proper authorities of said Home, were received and maintained as inmates of the Home, in lieu of the bridewell, until the expiration of such sentence. It is also alleged in the petition that from the time of petitioner's organization until July 1, 1883, the treasurer of the city of Chicago paid to it, in quarterly installments, for its support and maintenance, ten per cent of all moneys received for licenses to sell spirituous liquors

within the city; that after the said amendatory act went into force, to-wit, after July 1, 1883, the treasurer of said city of Chicago continued to pay over to petitioner, in the manner hereinbefore stated, in quarterly installments, for the support and maintenance of its aforesaid institution, ten per cent of all moneys received by him as such treasurer, as aforesaid, for all licenses granted by authority of said city of Chicago, not exceeding $20,000 in any one year, up to and including the quarterly installment due on the first day of January, 1893; that since January 1, 1893, the city treasurer has refused to make any payments.

It is claimed on behalf of the city of Chicago that section 7 of the act of 1867, which requires the city to pay to the Home ten per cent of all moneys received for licenses to sell spirituous liquors, and the amendatory act of 1883, whereby the amount was limited to $20,000 per annum, are unconstitutional and void; that the section and amendment violate that clause of the constitution of 1870 which reads as follows : "No county, city, town, township or other municipality shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation : *Provided, however*, that the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption."

It will be observed that this provision of the constitution prohibits cities and other municipal corporations from making donations or loaning their credit in aid of any private corporation, and the first question to be considered is whether the Washingtonian Home is a private corporation, within the meaning of the constitution. As has been seen, the second section of the act creating the Home declares the object of the corporation to be the

founding and maintenance of an institution for the care, cure and reclamation of inebriates. The charter contains nothing prohibiting the corporation from making such charges for the care or cure of patients as it may think best, but, on the other hand, section 3 confers the power to adopt such by-laws as it may think proper for the management of its business. The charter does not specify who the incorporators shall be, but the first section of the charter declares the Washingtonian Home Association of Chicago to be a body corporate and politic. Who constituted the association or what were the qualifications of members when it was created a corporation is not disclosed by this record. Section 4 provides that fifteen directors, to be selected by lot, shall hold office until the third Monday of January, 1869, and the remaining fifteen until the third Monday of January, 1871, but the act is silent as to who shall elect the first board of directors. The act nowhere prescribes how any person can become a member of the corporation, nor is there any provision in regard to the salary of officers or directors. So far as appears, the persons who composed the "Washingtonian Home Association of Chicago" when the act was passed were clothed with corporate power under which they might transact the business mentioned in the act for their own private benefit. At all events no State control over the institution is provided for, nor has Chicago or Cook county any voice in its control or management. The corporation has the right to acquire and hold property, both real and personal, but the State has no voice in the management or control of the property thus acquired or in the mode or manner in which the institution shall be managed or conducted. The act makes no provision for any report to be made by the institution to the State or any of its officials. Indeed, no provision whatever is made for an inspection or visitation of the institution in behalf of the State or by any State officer, but the entire supervision and control seem, under the

charter, to be entrusted to private individuals. No officer or manager of the corporation is elected by the people or appointed by the State. The institution owes no duty to the public or the State.

Is such a corporation a public one, or is it a private corporation, within the meaning of the constitution? A brief reference to a few authorities will demonstrate, as we think, that the corporation is a private one.

Morawetz on Private Corporations (2d ed. sec. 3,) says: "By another classification corporations have been divided into public corporations and private corporations. The difference between these two classes of corporations is radical, and hence they are, in many instances, governed by widely different principles of law. Private corporations are associations formed by the voluntary agreement of their members, such as banking, railroading and manufacturing companies. Public corporations are not voluntary associations at all, and there is no contractual relation between the corporators who compose them. They are merely government institutions, created by law for the administration of the public affairs of the community. States, counties and municipalities are examples of public corporations."

In *Dartmouth College* v. *Woodward*, 4 Wheat. 668, Justice STORY, in pointing out the distinction between private and public corporations, said: "Public corporations are generally esteemed such as exist for public purposes only, such as towns, cities, parishes and counties, and in many respects they are so, although they involve some private interests; but, strictly speaking, public corporations are such only as are founded by the government for public purposes, where the whole interests belong also to the government. If, therefore, the foundation be private, though under the charter of the government, the corporation is private, however extensive the uses may be to which it is devoted, either by the bounty of the founder or the nature and objects of the institution. For instance,

a bank created by the government for its own uses, whose stock is exclusively owned by the government, is, in the strictest sense, a public corporation. So a hospital created and endowed by the government for general charity. But a bank whose stock is owned by private persons is a private corporation, although it is erected by the government and its objects and operations partake of a public nature. The same doctrine may be affirmed of insurance, canal, bridge and turnpike companies. In all these cases the uses may, in a certain sense, be called public, but the corporations are private,—as much so, indeed, as if the franchises were vested in a single person. This reasoning applies in its full force to eleemosynary corporations. A hospital founded by a private benefactor is, in point of law, a private corporation, although dedicated by its charter to general charity. So a college founded and endowed in the same manner, although being for the promotion of learning and piety, it may extend its charity to scholars from every class in the community, and thus acquire the character of a public institution. This is the unequivocal doctrine of the authorities, and cannot be shaken but by undermining the most solid foundations of the common law. * * * When the corporation is said at the bar to be public, it is not merely meant that the whole community may be the proper objects of the bounty, but that the government have the sole right, as trustees of the public interests, to regulate, control and direct the corporation, and its funds and its franchises, at its own good will and pleasure."

Waterman on the Law of Corporations (sec. 17) says: "A corporation is private when the whole interest does not belong to the government, or the corporation is not created for the administration of political or municipal power. A chartered religious society is a private corporation. A corporation may be private and yet the charter contain provisions of a purely public character, introduced solely for the public good and as a general police

regulation of the State." See, also, *City of Louisville* v. *University of Louisville*, 15 B. Mon. 642; *People* v. *McAdams*, 82 Ill. 356; *Cleveland* v. *Stewart*, 3 Kelly, (Ga.) 283.

Under the rule declared in the authorities cited, it is plain that the Washingtonian Home is nothing more than a private corporation.

The constitution of 1848 contained no provision prohibiting cities from making donations to private corporations, and if the legislature conferred the power upon cities no reason is perceived why that power might not be exercised. But conceding that section 7 of the act of 1867, under which the Washingtonian Home was incorporated, was constitutional when enacted, the question then arises how that act was affected by the constitutional provision of 1870, which prohibits cities from making donations to private corporations. It will be observed that the act does not authorize the city to make a contract with the Home, under which persons sentenced to the bridewell for intemperance, drunkenness, or for any misdemeanor caused thereby, may be taken into the Home and retained for such time as they may have been sentenced, for treatment or for any other purpose, but the act, by its terms, is mandatory on the city, and compels it to pay over $20,000 per annum, in quarterly installments, to the Home for its support and maintenance. The petition for *mandamus* is not predicated on any contract existing between the city and the Home, but the right to require the payment of the fund is predicated on the provisions of the act of 1867, and upon those provisions alone.

It is set out in the petition that during the years 1892 and 1893, and up to the time the petition was filed, in 1894, the amount received by the city from licenses has not been less than $2,000,000 per annum, so that ten per cent received for licenses each year is far in excess of $20,000, so that the amount the Home seeks to compel the city to pay over has become a fixed and definite sum, and it is a matter of no moment whether the money demanded

by the Home comes from liquor licenses received by the city into its treasury or from funds in the treasury raised by taxation.  Under the act of 1867 the city was required to pay over to the Home each year from its revenues derived from liquor licenses, ten per cent of the amount received, not exceeding $20,000, for the support and maintenance of that institution.  This was required as a donation.  By the terms of the section of the constitution, *supra*, such donation was prohibited, and whatever may have been the obligation imposed upon the city by the act of 1867 before the constitution of 1870 was adopted, after the adoption of the constitution the city had no power or authority to donate any of its revenues derived from liquor licenses, or from any other source, to a private corporation.  It declares : "No county, city, town, etc., shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation."  This provision of the constitution required no legislation to place it in full force and effect.  It was like some other provisions of the constitution,—self-executing,—and operated as a paramount law from the time the constitution was adopted by the people.  *Phillips* v. *Quick*, 63 Ill. 445; *Hills* v. *City of Chicago*, 60 id. 86; *Chance* v. *Marion County*, 64 id. 66.

In the case first cited it is said: "But it may be said that constitutional provisions require legislation to carry them into effect.  This is true in many cases, but not in all, as will occur to every person on a moment's reflection.  In cases where its provisions are negative or prohibitory in their character they execute themselves: Where that instrument limits the power of either of the departments of the government, or where it prohibits the performance of any act by an officer or person, no one would contend that the power might be exercised or the act performed until prohibited by the General Assembly. The constitution undeniably has as much vigor in prohibiting the exercise of power or the performance of an

act as the General Assembly. That body could add to the prohibition penalties and forfeitures if the constitutional prohibition should be disregarded, but the prohibited act would, nevertheless, be void. Where the constitution requires the performance of an act, but provides neither officers, the means or the mode in which the act shall be performed, in such a case there is no other means of carrying such a provision into effect but by appropriate legislation. In such cases the constitution does not execute such provisions. That instrument, all will concede, may repeal, and does repeal, laws which are repugnant to its provisions. The very first section of the schedule declares that all laws in force at the adoption of the constitution, and not inconsistent with its provisions, shall continue to be as valid as if the constitution had not been adopted. This, by implication, says that all that conflict therewith shall be invalid and of no force. In fact, this provision preserves rights of the State and of individuals that would otherwise have been lost. The understanding with all persons is, that a law passed, either before or after the adoption of the constitution, which is repugnant to its provisions, must be held to be of no valid force, and precisely as if it had been repealed before the performance of the act."

This question is discussed in *County of Cook* v. *Industrial School for Girls*, 125 Ill. 540, and among other things it is there said (p. 566): "If, on the one side, a statute directs the county board to pay money to a school, which appears, not on the face of the statute, but from outside proof, to be controlled by a church, and if, on the other side, the constitution, in a self-executing provision, directs the county board not to pay money to such a school, which direction is to be followed? We answer, unhesitatingly, the latter. When the constitution says, 'You must not pay,' it must be obeyed in preference to a statute which says, 'You must pay.' And this is true, not only where the statute, on its face, is in conflict with the

constitutional provision, but also in a case where an attempt to apply the statute to a given state of facts gives rise to a violation of such provision.   We are, therefore, of the opinion that, upon the facts of this case, the act of May 28, 1879, imposes no obligation upon the county of Cook which is superior to its obligation to obey section 3 of article 8 of the constitution."

We do not think the constitution operated retrospectively.   Under section 7 of the act of 1867 the city was authorized to make an annual donation to the Home, but upon the adoption of the constitution, in 1870, all cities were thereafter prohibited from making donations to a private corporation.   The donations made prior to the adoption of the constitution remained unaffected, but donations after that time were prohibited.

But it is insisted, in the argument, that as the city paid over this fund, quarterly, for a period of over twenty years, as required by section 7 of the act, and as the payment was recognized each year in the annual appropriation ordinances of the city, and as the city has received a substantial benefit each year, in return the city is bound by its ratification of the act, and is now estopped from denying its constitutionality.   By the adoption of the constitution, in 1870, the seventh section of the act of 1867 was repealed, and from that time it was nugatory, and the fact that the officers of the city for twenty-two years paid over to the Home, annually, a portion of the revenue of the city in violation of law could not work an estoppel on the city.   Nor did the fact that the city council annually, in its appropriation ordinances, recognized and made provision for the payment of the fund to the Home estop the city from refusing payment at any time it might elect to do so.   The revenues of the city of Chicago arising from licenses, from taxation, and from all other sources, are owned by the city and held by it in trust, to be used for corporate purposes which are lawful, and the revenues of a city cannot be diverted to any

other purpose. The revenues of a city cannot be donated by the officers of the city, or by the city council, to any person they may think entitled to the same, but, on the other hand, such revenues can only be paid out or appropriated by the city council or its officers in the manner and for the purposes authorized by law. Where the lawful power does not exist the payment is unauthorized and void, and the city will lose no rights where the money has been unlawfully paid out by its officers. The city having no power to pay over its revenues to the Home, the fact of payment for a series of years will not estop it.

In *Logan County* v. *City of Lincoln*, 81 Ill. 156, in speaking in regard to *estoppels in pais*, it is said (p. 159): "Before the doctrine of estoppel can be invoked there must have been some positive acts by the municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done."

An estoppel by matter *in pais* may be defined as an indisputable admission, arising from the circumstances, that the party claiming the benefit of it has, while acting in good faith, been induced, by the voluntary, intelligent action of the party against whom it is alleged, to change his position. (Bigelow on Estoppel, 2d ed. 345.) "The other party must have been induced to act upon the representation or concealment. His action must have been of a character to result in substantial prejudice were he not permitted to rely on the estoppel." (7 Am. & Eng. Ency. of Law, 17, 18.) Here, so far as appears, the Home was not induced to change its position, nor was it induced to do or not do anything, on account of the payments which were annually made by the city of Chicago, different from what it would have done if the city had never made any payments.

The judgment will be affirmed.

*Judgment affirmed.*