STATE OF DELAWARE, ON THE RELATION OF THE VOLUNTEER FIREMEN'S RELIEF ASSOCIATION OF WILMINGTON, DELAWARE, a corporation of the State of Delaware, *vs.* THE MAYOR AND COUNCIL OF WILMINGTON, ET AL.

(*June* 16, 1926.)

PENNEWILL, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*Henry R. Isaacs* for petitioner.

*Caleb S. Layton* for respondents.

Superior Court for New Castle County, March Term, 1926.
 No. 254, September Term, 1922.

RICHARDS, J., delivering the opinion of the Court:

Prior to December 1, 1921, the various fire companies of the city of Wilmington were private companies, owning their own fire houses, engines and equipment and the city in its corporate existence took no part in their management and control.

The Legislature of 1921 passed an act entitled, "An Act creating a Department of Public Safety for the City of Wilmington, and prescribing its powers and duties." 32 *Del. Laws*, *c.* 111. This act was approved by the Governor and became a law on March 16, 1921. The said act authorized the "Mayor and Council of Wilmington" through the "Department of Public Safety," on and after May 1, 1921, to establish a fire department for the city, and take over for public use by purchase, compromise, condemnation or otherwise, such real and personal property of the several fire companies of Wilmington as were in existence and recognized by the "Mayor and Council of Wilmington" as a part of the fire department of the city, on September 1, 1918.

*Section* 13 of the act further provided as follows:

"Within three months after the taking over by the 'Department of Public Safety,' of the real and personal property of the several fire companies, the said 'the Mayor and Council of Wilmington' shall pay to the proper officers of the Volunteer Firemen's Relief Association, the sum of fifteen thousand dollars, the same being in full payment for all claims and demands whatsoever."

It appears from the petition and alternative writ that the real and personal property of the several fire companies was taken over by the "Department of Public Safety" on or about December 1, 1921; and it further appears that the three months period within which "the Mayor and Council of Wilmington" was required under the provisions of *Section* 13 of the act above mentioned, to pay to the proper officers of the "Volunteer Firemen's Relief Association," the sum of fifteen thousand dollars, has expired but that said amount has not been paid.

An examination of the petition discloses that the relator is a private corporation existing under the laws of this state for the purpose of acting for the benefit of the members of the old volunteer fire companies. It is contended by the relator that during its existence it has been a benefit to its members, a large part of whom are members of the present paid fire department of Wilmington.

It is contended by the respondents that *Section* 13 of the act in question is unconstitutional for three reasons:

1. Because the appropriation of $15,000 provided for therein is not for a public purpose.

2. Because it is in violation of *Section* 8 of *Article* 8 *of the Constitution of this State*, which provides as follows:

"No county, city, town or other municipality shall lend its credit or appropriate money to, or assume the debt of, or become a shareholder or joint owner in or with any private corporation or any person or company whatever."

3. Because it violates *Section* 16 *of Article* 2 *of the Constitution of this state*, which provides as follows:

"No bill or joint resolution, except bills appropriating money for public purposes, shall embrace more than one subject, which shall be expressed in its title."

The purposes for which governments, or their political subdivisions, can make appropriations of money has been generally held to be closely identified with the right to tax. This right to tax is not necessarily a constitutional right, but is inherent in every sovereign state; it is a necessary attribute of sovereignty which underlies it and without which organized government could not exist. *McCulloch v. State of Maryland*, 4 *Wheat*. 428, 4 *L. Ed.*

607; *Nathan v. Louisiana,* 8 *How.* 73, 12 *L. Ed.* 997; *State Board of Tax Commissioners v. Holliday,* 150 *Ind.* 216, 49 *N. E.* 14, 42 *L. R. A.* 826; *Redmond v. Town of Tarboro,* 106 *N. C.* 122, 10 *S. E.* 845, 7 *L. R. A.* 539; *Hill v. Higdon,* 5 *Ohio St.* 243, 67 *Am. Dec.* 289; *Cooley on Taxation, vol.* 1, § 57.

■ This power to tax is the strongest and most far-reaching of all governmental powers; as expressed by Chief Justice Marshall, in the case of *McCulloch v. State of Maryland,* above cited, it includes the power to destroy, consequently the principle seems to be as well settled as the right to tax, that no tax can be levied except to raise money which is to be appropriated or expended for a public purpose.

■ Therefore, since the power of the state to raise money by taxation is restricted to such uses as are for the public good, it naturally follows that money raised by this means cannot be expended except for the benefit of the public, and that appropriations of public funds can only be made for those purposes which are for the public use. *Citizen's Saving & Loan Ass'n v. Topeka,* 20 *Wall.* 655, 22 *L. Ed.* 455; *Washingtonian, etc., v. Chicago,* 157 *Ill.* 414, 41 *N. E.* 893, 29 *L. R. A.* 798; *Beach v. Bradstreet,* 85 *Conn.* 344, 82 *A.* 1030, *Ann. Cas.* 1913B, 946; *Opinion of the Justices,* 155 *Mass.* 601, 30 *N. E.* 1142, 15 *L. R. A.* 810; *Baltimore, etc., R. Co. v. Spring,* 80 *Md.* 510, 31 *A.* 208, 27 *L. R. A.* 72; *Anderson v. Kerns Draining Co.,* 14 *Ind.* 199, 77 *Am. Dec.* 63; *Mahon v. Board of Education,* 171 *N. Y.* 263, 63 *N. E.* 1107, 89 *Am. St. Rep.* 810; *Asbury v. Albemarle,* 162 *N. C.* 247, 78 *S. E.* 146, 44 *L. R. A.* (*N. S.*) 1189; *State v. Lynch,* 88 *Ohio St.* 71, 102 *N. E.* 670, 48 *L. R. A.* (*N. S.*) 720, *Ann. Cas.* 1914D, 949.

It is not contended that the relator is a public corporation, but it is contended that it serves the public which it has been doing for a number of years and that the funds which come into its possession are used for public purposes. We are, therefore, confronted with the plain proposition, whether the appropriation of $15,000 made by *Section* 13 of the act, to the proper officers of the Volunteer Firemen's Relief Association, is for the benefit of the public.

Before the establishment of a paid fire department the residents of Wilmington were compelled to depend upon the various volunteer fire companies for protection against fire, but they had no part in their management. The members of these volunteer fire companies were not employees of the city, although the companies were recognized by the city as its only protection from fire and said members, in the discharge of their duties, rendered a service to the public.

True it is that the Volunteer Firemen's Relief Association, a private corporation, was created by the members of the various volunteer fire companies for their own relief and protection, but it does not appear that the city of Wilmington had any power or control in the management of its affairs. It is not denied that the Association was a benefit to its members, just as any other organization of that character would be a benefit to its members, but we fail to see how it can be argued from that fact alone that it was a benefit to the general public.

The volunteer fire companies were organized and maintained to render a public service, but how can it be successfully contended that the Relief Association created by the members of the volunteer fire companies, for their own personal advantage, likewise rendered a public service. The fact that the relator still exists and a large part of those who will be benefited by it may be members of the present paid fire deparment of the city, does not change its status. The relator contends that it occupies the same position with relation to the city of Wilmington as did the Ferris Industrial School to New Castle County in the case of *State v. Levy Court*, reported in 1 *Penn.* 597, 43 *A.* 522, but we cannot agree with that contention. The Ferris Industrial School was incorporated by an act of the Legislature which provided that vagrant, incorrigible or vicious minors could be committed thereto by the Court of General Sessions of New Castle County, the Municipal Court of the City of Wilmington, or any Justice of the Peace of New Castle County, in the manner provided by the act. An amendment to the act made the following provision:

"The Levy Court of New Castle County, shall provide and approprate annually, the sum of one hundred dollars toward the maintenance and education of each boy committed to the custody of the Board of Trustees of the said school, under *Section 5* of said act; so long as he may remain in said custody. This provision shall apply to all those who are now in the custody of the said trustees, as well as to those who hereafter may be committed to their custody." 21 *Del. Laws*, 213.

The Court held that the appropriation was not to the corporation as such, but toward the maintenance and education of each boy committed to the custody of the Board of Managers. The following language shows that it considered the appropriation of a public nature:

"Such appropriation is so broadly public and impersonal in its scope and character as to rebut if not rebuke any suggestion of private emolument or private interest, within the intendment of the Constitution which clearly means that the county shall not be a party in or to private corporations."

This relator occupies the same position with respect to the public as do the numerous lodges and fraternal societies which exist throughout the state, all of which are an aid and benefit to those who belong to or compose them but none of which can be held to be a public benefit.

The case of *Phœnix Assurance Co. v. Montgomery Fire Department*, 117 *Ala.* 631, 23 *So.* 843, 42 *L. R. A.* 468, does not apply to the case now under consideration. In that case, the money was to be paid to the Fire Department of the city of Montgomery, "to enable the Fire Department to reward superior skill and exertion in the members; to provide for those who may become sick and disabled in the discharge of their duties as firemen, or their families;" while in this case the appropriation was to the Volunteer Firemen's Relief Association, which was a separate organization from the volunteer fire companies.

Much of the foregoing opinion to the effect that the appropriation is not for a public use, applies with equal force to the contention that it is in conflict with *Section 8 of Article 8 of the State Constitution* and a number of the cases cited support that position.

Since it is practically admitted that the relator is a private corporation, and *Section 8 of Article 8 of the Constitution* clearly prohibits the appropriation of money to a private corporation we

fail to see how *Section* 13 of *Volume* 32, providing for the appropriation of $15,000 can be upheld.

In the case of *Washingtonian Home of Chicago v. City of Chicago*, 157 *Ill.* 414, 41 *N. E.* 893, 29 *L. R. A.* 798, a petition for a mandamus was filed by the home to compel the city of Chicago to pay it $25,000. The petitioner was a corporation organized to maintain an inebriate asylum, its charter providing that persons might be received by it who had been sentenced to a house of correction, giving it power to elect its own directors and providing for no control by the state. It was held to be a private corporation under the Constitution of Illinois forbidding donations by municipal corporations to private corporations.

The case of *State v. Levy Court*, above referred to, is also relied upon to support the contention that the appropriation is not to a private corporation. It is pointed out that in that case the Court held the appropriation was not to the corporation as such, but "toward the maintenance and education of each boy committed to the custody;" from which it was argued that the appropriation in the case before us, being "to the proper officers of the Volunteer Firemen's Relief Association," was not to the corporation as such, and, therefore, not to a private corporation. But they are not parallel cases. No one would attempt to convince the Court that the appropriation in the case before us was for the personal benefit of the officers of the said Association, then how can it be successfully argued that it was not intended for the said Association? The words following the appropriation, "being in full payment of all claims and demands whatsoever," are not helpful to it as no claims or demands of any nature have been shown to exist.

The additional reasons advanced by the relator in favor of the validity of the appropriation, namely, that it is a constitutional recognition of a moral obligation, and that the statute makes it an incidental condition to the establishment of a paid fire department in the city of Wilmington, have been considered by the court and the authorities cited in favor thereof examined, but we are unable to see how those principles can be applied to this case.

It seems clear to us that this appropriation is not only not for public purposes, but that it is in favor of a private corporation and in violation of *Section* 8 *of Article* 8 of the state Constitution.

The motion to quash the writ is granted.