AETNA CASUALTY AND SURETY COMPANY, ET AL.,
Plaintiffs,

*vs.*

HARRY S. SMITH, Commissioner of Insurance for the State of
Delaware, et al.,
Defendants,

THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation
of the State of Delaware,
Intervenor,

and

AETNA CASUALTY AND SURETY COMPANY, ET AL.,
Plaintiffs,

*vs.*

HARRY S. SMITH, Commissioner of Insurance for the State of
Delaware, et al.,
Defendants,

THE MAYOR AND COUNCIL OF WILMINGTON, a municipal corporation
of the State of Delaware,
Intervenor,

DELAWARE VOLUNTEER FIREMEN'S ASSOCIATION, a non-profit
Delaware corporation,
Additional Intervenor.

*Supreme Court of Delaware, April 12, 1957.*

*Clyde M. England, Jr.,* of Killoran & Van Brunt, Wilmington, for plaintiffs.

*Herbert L. Cobin,* Chief Deputy Atty. Gen., and *Wilfred J. Smith, Jr.,* Deputy Atty. Gen., for defendant Harry S. Smith.

*William F. Lynch,* 2d Asst. City Solicitor, Wilmington for intervenor The Mayor and Council of Wilmington.

*William S. Potter* and *James L. Latchum,* of Berl, Potter & Anderson, Wilmington, for additional intervenor Delaware Volunteer Firemen's Ass'n.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

BRAMHALL, Justice: Plaintiffs are insurance companies engaged in the business of insuring risks of fire in the State of Delaware. The original defendant is the State Insurance Commissioner. Because of their interest, The Mayor and Council of Wilmington, a municipal corporation of the State of Delaware, and the Delaware Volunteer Firemen's Association, a non-profit Delaware corporation, were permitted to intervene as parties defendant.

Plaintiffs seek a declaratory judgment and a preliminary injunction. They allege the existence of a controversy between plaintiffs and defendants concerning the constitutionality of House Bill No. 597, 50 *Delaware Laws, Ch.* 156, 18 *Del.C.* § 2705—providing for an increase from 2% to 3½% in the tax rate on gross premiums of fire insurance companies insuring risks in this state for the purpose of increasing the funds available for the *firemen's pension fund*—and House Bill No. 361, as amended, 50 *Delaware Laws, Ch.* 358, 18 *Del.C.* §§ 2710 to 2713, imposing a tax of 2% on gross insurance premiums of companies insuring risks in this state covering burglary, robbery, theft, automotive and personal property damage, liability, automotive medical payments, automotive collision and automotive comprehensive, for the purpose of augmenting the state, county and municipal *police pension systems.* These Acts were all passed at the Session of the 118th General Assembly of this State. A preliminary injunction was granted by the Chancellor enjoining the Insurance Commissioner

from paying over to the State Treasurer the moneys raised under these Acts.

The controversy arises because that official demanded and received the tax so imposed but plaintiffs objected to the payment thereof on the ground that the amendatory acts are unconstitutional. Because of public importance and urgency for a prompt determination, the issues of law having been framed, the Chancellor has certified to this court in cases Nos. 39 and 40, 1956, certain questions relating to the constitutionality of these Acts. The questions which apply to both cases are as follows:

Are House Bills No. 361 (50 *Del.Laws, Ch.* 358) and No. 597 (50 *Delaware Laws, Ch.* 156) unconstitutional:

(1) Because they violate Art. 8, § 4 of the Constitution of the State of Delaware in that they appropriate public money to counties and municipalities and were not passed by a vote of three-fourths of the members elected to each House of the General Assembly?

(2) Because they violate Art. 8, § 4 of the Constitution of the State of Delaware in that they appropriate public money to a corporation and were not passed by three-fourths of the members of each House of the General Assembly?

(3) Because they appropriate public money for other than public purposes?

In No. 40, 1956, 50 *Delaware Laws, Ch.* 156—appropriating money for the benefit of the Firemen's Pension Fund of the City of Wilmington and volunteer fire companies in the state, outside of Wilmington—the following additional question is raised:

Is House Bill No. 361 (50 *Del.Laws, Ch.* 358) unconstitutional:

(4) Because it violates the equal protection and due process clauses of the Fourteenth Amendment to the Federal Constitution and the due process clause of Art. 8, § 1 of the Constitution of the State of Delaware in that it is discriminatory and imposed

a classification upon plaintiffs which has no reasonable relation to the object of the legislation?

We consider these questions in the order presented. Any additional facts which may be necessary for the proper determination of any question will be considered in the discussion of that question.

I. *Are House Bills Nos. 361 (50 Del.Laws Ch. 358) and 597 (50 Delaware Laws, Ch. 156) unconstitutional because they violate Art. 8, § 4 of the Constitution of the State of Delaware in that they appropriate public money to counties and municipalities and were not passed by a vote of three-fourths of the members elected to each House of the General Assembly?*

House Bill No. 361, 50 *Del.Laws, Ch.* 358, added an amendment to the *Revised Code of* 1953 as 18 *Del.C.* § 2711, which provided as follows:

"Every insurance company doing business in this State shall annually pay to the Insurance Commissioner on or before the first day of March, in addition to other taxes, fees, and charges required by law, a tax equal to two per cent of the gross premiums, less return and reinsurance premiums received from other companies or by an agent or agents of such company for such company, in cash or otherwise from the insurance on insurable risks covering burglary, robbery, theft, automotive personal and property damage liability, automotive medical payments, automotive collision, and automotive comprehensive within the limits of this State during the preceding calendar year. In case of mutual companies the dividends paid or credited to members on such premiums shall be construed to be return premiums. No insurance company affected by provisions of this section shall increase the rate of insurance premiums upon any insurable risk affected by this section because of the tax provided for in this section, unless the Insurance Commissioner after hearing on the matter shall be satisfied that an increase is necessary, and in the event that the Insurance Commissioner shall be satisfied after such hearing that an increase in the premium rate is necessary, he

shall authorize such reasonable increase as he deems fair and equitable."

House Bill No. 597,[1] 50 *Delaware Laws, Ch.* 156, amended 18 *Del.C.* §§ 2705 and 2706 which, prior to the amendment, provided as follows:

"§ 2705. Special tax on gross premiums of fire insurance companies. For the purpose of assisting in maintaining fire companies or departments in this State, every fire insurance company doing business in this State shall annually pay to the Insurance Commissioner on or before the first day of March in addition to the other taxes, fees and charges required by law, a tax equal to 2% of the gross premiums, less return and reinsurance premiums received from other companies or by any agent or agents of such company for such company, in cash or otherwise, from the insurance of property within the limits of this State during the preceding calendar year. In case of a mutual company, the dividends paid or credited to members on such premiums shall be construed to be return premiums."

"§ 2706. Distribution of the proceeds of the special tax on gross premiums of fire insurance companies. The money received, under section 2705 of this title, shall be set aside as a special fund for assisting in maintaining fire companies or departments in this State and shall be paid out by the State Treasurer to the treasurer of the City of Wilmington, and to the respective treasurers of each county for the sole purpose of assisting in maintaining fire companies or departments in such counties in such manner and in such proportions as provided in this section."

Plaintiffs assert that House Bill No. 597, amending § 2705 by increasing the special tax on the gross business of certain types of insurance companies, amounts to an appropriation act. They say that this section is so tied-up with § 2706 (providing that the moneys levied under § 2705 shall be used for the benefit of the pension fund

1. Under 50 *Delaware Laws Ch.* 156, the amount of the tax on gross premiums was increased from 2% to 3½%.

of the City of Wilmington and fire companies in the county of New Castle, outside of Wilmington, and in Kent and Sussex counties) that the two sections must be interpreted together.

Defendant Insurance Commissioner and Intervenor Defendant The Mayor and Council of Wilmington contend that House Bill No. 361, 50 *Delaware Laws, Ch.* 358, which provides for a special tax on certain gross premiums of insurance companies for the benefit of pension funds for any state, county or municipal police department having a pension fund or which shall hereafter by law have police pension funds, is not an appropriation act and therefore did not require passage by a three-fourths vote of all the members elected to each House of the General Assembly. Intervenor defendant Delaware Volunteer Firemen's Association says, in addition, that the funds appropriated under House Bill No. 597, relating to firemen's pensions for the City of Wilmington and volunteer fire companies in other parts of the state, are special funds and therefore do not come within the provision of § 4 of Art. 8 of the Delaware Constitution, *Del.C.Ann.;* that this special fund is in the nature of a trust fund, dedicated to a specific purpose; that assuming that § 2706 is an appropriation act, that section when it was adopted in the 1953 Code received a three-fourths majority vote; that it was a continuing appropriation of all money of the special fund which continues until properly annulled.

Art. 8, § 4 of the Constitution of 1897 is as follows:

"Section 4. No appropriation of the public money shall be made to, nor the bonds of this State be issued or loaned to any county, municipality or corporation, nor shall the credit of the State, by the guarantee or the endorsement of the bonds or other undertakings of any county, municipality or corporation, be pledged otherwise than pursuant to an Act of the General Assembly, passed with the concurrence of three-fourths of all the members elected to each House."

We first consider plaintiffs' contention that §§ 2705 and 2706 of *Title* 18, *Del.C.* 1953, are in *pari materia* and should be construed together. We take up first the legislative history of these sections.

Although §§ 2705 and 2706 of this title now constitute two separate sections, this division was not made until the enactment of the 1953 Code. Originally in 19 *Delaware Laws, Ch.* 23, § 7, the statute simply provided for a flat tax of $100 on insurance companies doing business in this state, payable to the general fund. Thereafter this law was amended by 37 *Delaware Laws, Ch.* 53, § 2, containing in a single section substantially the same provisions now found in §§ 2705 and 2706. The defendants contend that since this act in the 1953 Code was broken up into two sections, they must be construed separately and that, if so construed, the amendment to the act does not require a three-fourths vote of all the members of each branch of the legislature.

We think that the two sections should be construed together. The fact that they were originally passed in this manner by the legislature would indicate that the legislature intended that they should be interrelated. Sound reasoning leads to the same conclusion. The tax section, 2705, provides for the raising of money by taxation; the appropriation clause, 2706 provides that the proceeds of such tax shall be used for the benefit of fire companies of this state and the firemen's pension fund of the Bureau of Fire of the City of Wilmington. Without the appropriation to these agencies there would have been no purpose for levying such a tax. Without the levying of such a tax, obviously there would have been no fund to appropriate for this purpose. The two sections are in *pari materia* and should be so construed. *Michigan Good Roads Federation v. Alger,* 333 *Mich.* 352, 53 *N.W.* 2d 481. The fact that the Revised Code Commission in revising the 1953 Code separated the one section into two sections does not at all change the interpretation which should be given to these sections.

But defendant Delaware Volunteer Firemen's Association says that § 2706 when adopted in the 1953 Code of this state received a three-fourths vote. This defendant says that the appropriation was a continuing one, in which the whole amount that might be received in that fund was appropriated until properly annulled.

It must be noted that plaintiffs are not attacking this provision in the 1953 Code; they have specifically stated that their fire is directed at the amendment passed in 1955.

This argument is predicated entirely upon the contention that § 2705 and § 2706 must be construed separately. Since we have decided that these two sections are so interrelated that they must be construed together, there is no force to this argument.

■ We next consider whether § 4 of Art. 8 applies where the money derived from the tax is placed in a separate fund earmarked for a special purpose. Defendants say that the constitutional provision applies only to general public funds; that the fund raised by these acts is a special fund and does not constitute an appropriation of public money within the contemplation of this section of the Constitution. It is also suggested that the framers of our Constitution were interested primarily in preventing the credit of the state from being affected rather than the appropriation of moneys for the benefit of counties, corporations and municipalities.

The language of this section of the Constitution is very comprehensive and is much broader in scope than the language used in similar sections of the constitutions of some other states. In the section here involved it is provided that "no appropriation of the public money shall be made to * * * any county, municipality or corporation * * *."

It would seem to be quite clear from the language of this section that it was the intention of the framers of the Constitution to include within its range the appropriation of all public moneys. This conclusion is substantiated by a study of the Debates of the Constitutional Convention of 1897. On page 3772 William C. Spruance—one of the outstanding leaders of the Convention and later a judge of the courts of this state—in discussing the purpose of this section of the Constitution said: "The general scope of it is this: to check if not entirely prohibit the appropriation of public money or the bonds of this state * * *." The original section under consideration contained a provision that any appropriation must be "substantially approved by a majority of all the votes cast at the next general election held after such enactment". In the discussions with reference to this section attention was called to the fact that appropriations to counties and municipalities were absolutely prohibited under the Constitutions of many states. Reference was made to the fact that the legislature at

one time had caused the state to guarantee certain railroad bonds, as an example of one of the evils which it was the purpose of this section to prevent. Concerning appropriations to counties, municipalities and corporations, Spruance also said: "Let these localities and others take care of themselves; that is my notion about it".

From the consideration of the very broad language of this section of the Constitution and the language used at the Constitutional Convention during the discussion of this section, we are convinced that it was the intention of the framers of the Constitution to close all avenues by which money or credit, or both, of the state, might be appropriated for the benefit of any county, municipality or corporation, unless the act providing for such appropriation should receive a vote of three-fourths of the members elected to each branch of the legislature. The fact that the moneys collected by the tax were earmarked for the purpose for which the tax was levied, or even that the appropriation is a continuing one, is in no sense controlling in a case where it was clearly the intention of the members of the Constitutional Convention that a rigid restriction should be made concerning the power of the legislature to make such appropriations. We think that to permit the legislature to pass an Act in which, instead of a direct appropriation from the state treasury, certain income is turned over directly to the county, municipality or corporation for whose benefit the act was passed, without receiving the necessary three-fourths vote as provided for in the Constitution, is but to permit the legislature to do indirectly what the Constitution specifically says may not be done directly.

Defendants have cited a number of cases from other states, in which the courts of those states, for one reason or another, have held that the particular provisions of the constitutions involved did not apply where the money raised by taxation was placed in a separate fund and was to be paid out of that fund. Undoubtedly these cases are good law in those states; the highest courts of those states have said so. But we do not think that these cases have any application in this state where the intention of the framers of our Constitution was clearly to prevent the appropriation of *any* money to counties, municipalities or corporations except as provided in the Constitution. Under these circumstances we think that the money appropriated by these

Acts amounts to an appropriation, as that word is used in *Art.* 8, § 4 of the Constitution. The fact that it is paid into a special fund, earmarked for a special purpose, is, in view of our conclusion, unimportant. For the same reason the fact that it is a continuing appropriation does not affect its validity one way or the other.

The fact that the fire companies which under these Acts would receive a large portion of the moneys appropriated are corporations does not make them any less the agents of the counties in which they are situate. Volunteer fire companies outside of Wilmington perform the same functions for the three counties as the fire department of the City of Wilmington does for that city. While the money is in effect appropriated to the fire companies, it is for a public purpose. Fire protection is certainly a governmental matter. In this state, at least, it has long been considered a matter for the respective counties. For many years the Levy Courts of the respective counties have been directed by the legislature to appropriate moneys to the different volunteer fire companies. See 9 *Del.C., Sections* 1902, 4131, 4132, 6131, and 6132. Under the Acts in question, after payment by the State Treasurer to the respective levy courts, distribution is made to the different fire companies for the purpose of combating fires. It is therefore apparent that the money appropriated under these Acts would also constitute public moneys.

Plaintiffs do not assert that their objection to House Bill No. 361 as amended applies to the State Police Pension Fund. They aver, however, that the Act is not separable and that therefore the provision relative to the State Police Pension Fund must also fail. It is obvious *Art.* 8, § 4 of the Constitution has no application to this agency, since it is neither a county, municipality or corporation, but an agency of the state.

We think that plaintiffs are correct in their contention and that the Act is not severable. The appropriation is for the benefit of all state, county and municipal police entitled to benefits under the provisions of the Act. The amount to be appropriated is indefinite but constitutes an amount to be ascertained by the State Treasurer. The Act provides that it is the duty of any state, county or municipal

police department participating therein to provide the State Treasurer with information as to the location, jurisdiction, and average number of paid full-time, sworn policemen employed. The State Treasurer must then determine the total number of police entitled to benefits from this registry and make distribution proportionately on a per capita basis. It will readily be seen that because of the fact that we have held the Act to be unconstitutional as far as it concerns county and municipal police, it now becomes impossible for the State Treasurer to receive the information required under the statute or to make distribution as provided by the Act based upon the information furnished him.

It is our conclusion that the first question must be answered in the affirmative.

> II. *Are House Bill No. 361 (50 Del.Laws, Ch. 358) and House Bill No. 597 (50 Laws of Delaware, Ch. 156) unconstitutional because they violate Art. 8, § 4 of the Constitution of the State of Delaware in that they appropriate public money to a corporation and were not passed by three-fourths of the members of each House?*

■ Plaintiffs contend that the appropriations to the volunteer companies of the state outside of the City of Wilmington constitute an appropriation of public money to a corporation and that since the Act in question did not receive a three-fourths vote of all the members of each House of the Legislature, as provided for under *Art.* 8, § 4 of the Constitution of this State, the Act is unconstitutional.

It appears to be conceded by plaintiffs that the money appropriated is for the benefit of the counties. Plaintiffs' contention with respect to this point is presented only upon the assumption that this court has ruled against them under question No. 1. Since in answer to that question we decided that the appropriations were made to the counties and municipalities it is obvious that the appropriations could not have been made to corporations as contemplated under *Art.* 8, § 4 of the Constitution of this State. Moreover, since plaintiffs do not under such circumstances press this question, it is not necessary that we consider it here.

It is our conclusion that this question should be answered in the negative.

III. *Are House Bill No. 361 (50 Del.Laws, Ch. 358) and House Bill No. 597 (50 Laws of Delaware, Ch. 156) unconstitutional because they appropriate public money for other than a public use?*

The underlying question is whether it is within the power of the legislature to make appropriations for the purpose of providing police benefit funds for the benefit of the state outside the City of Wilmington. It is a fundamental principle of constitutional law that money raised by taxation can be used only for a public purpose. The basic inquiry therefore is whether the purpose of such expenditure constitutes a public purpose.

There is no universal test for the determination of whether or not the purpose of an Act is a proper object of public expenditure. Largely each case must be decided with reference to the object sought to be accomplished and to the manner and degree in which the public welfare is affected. In many instances a project may be for the benefit of private individuals or corporations as well as conferring a benefit upon the public. Under such circumstances courts will endeavor to ascertain whether the primary object of the Act is the benefit of the public or the benefit of the individual.

We think that the purpose of these Acts is a public one. The public in general benefits from the service rendered by the police and fire companies. Certainly there is no greater need on the part of the public than for protection to the lives and property of the people. This need largely must be supplied by public effort. The aid and encouragement of the police and fire companies to continue their efforts for the protection of the public is a worthy public purpose. The fact that individuals will benefit thereby is only incidental. *Gall v. City of Wheeling,* 119 *W.Va.* 93, 192 *S.E.* 116, 112 *A.L.R.* 477.

Defendants cite the case of *State ex rel. Volunteer Firemen's Relief Ass'n of Wilmington v. Mayor and Council of Wilmington,* 3 *W.W.Harr.* 238, 134 *A.* 694. In that case the court found the pay-

ment of tax money was to a voluntary firemen's relief fund, a private non-profit organization, to be used for the benefit of its individual members. In the case before this court the money disbursed goes to the City Treasurer of Wilmington to become a part of a public fund for the benefit of city employees. Since the disbursements for the benefit of the fire companies of the three counties do not in any manner directly affect the individual members of these companies, the question of any private benefit has no application.

We question that there is anything in the language of the opinion in the *Mayor and Council of Wilmington* case which necessarily conflicts with our determination in this case, but, if there is, anything therein to the contrary is hereby expressly overruled.

This question is answered in the negative.

IV. *Is House Bill No. 361 unconstitutional because of unreasonable classification?*

Under this bill the legislature has provided for a tax of 2% on the gross premiums of insurance companies doing business in this state for distribution to the officers in charge of state, county or city police funds. Plaintiffs say that it is unconstitutional because it arbitrarily discriminates against insurance companies in violation of the equal protection clause of the Fourteenth Amendment of the Federal Constitution and *Art.* 8, § 1 of the Constitution of the State of Delaware.

The purpose of this Act, as recited in the Preamble thereto, is to provide means of assisting the financing of state, county and municipal police funds. Such is also the effect of the language set forth in the body of the act. Plaintiffs say that the insurance companies taxed by this act are arbitrarily discriminated against because they are not the unique or primary beneficiaries of good law enforcement and that this therefore results in a tax which is based upon an unreasonable classification and not uniform, as provided by the Fourteenth Amendment to the Federal Constitution and by *Art.* 8, § 1 of the Constitution of this state.

*Art.* 8, § 1 of the Constitution of 1897 of the State of Delaware is as follows:

"Section 1. All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the General Assembly may by general laws exempt from taxation such property as in the opinion of the General Assembly will best promote the public welfare."

It has been held in this state, in the field of taxation, that the constitutionality of an act under the equal protection clause of the Fourteenth Amendment and under the provisions of *Art.* 8, § 1 requiring uniformity of taxation, is to be determined by the reasonableness of the classification. *Conard v. State, 2 Terry* 107, 16 *A.2d* 121.

Certain other fundamental principles of law are pertinent. There is of course a presumption that the statute is constitutional. Legislatures have a wide discretion in the matter of classification for the purpose of taxation which the courts will not disturb unless the statute is clearly arbitrary. *Conard v. State, supra.* The existence of facts to support the classification of the legislature must be assumed if any set of facts can reasonably be conceived which will sustain such classification. *Conard v. State, supra.* Generally, each case necessarily depends upon its own circumstances.

We find nothing in the language of this Act to suggest that the tax amounts to an unreasonable classification or is not uniform. It will not be seriously disputed that legislatures have the right to classify objects of taxation provided the classification adopted is reasonable and not arbitrary. *Philadelphia, B. & W. R. Co. v. Mayor and Council of Wilmington,* 30 *Del.Ch.* 213, 57 *A.2d* 759; *Conard v. State, supra.* The Act includes all companies within the class. It operates alike and uniformly on each company within the class. The fact that those who do not pay the tax will also receive equal benefit of police protection will not render the classification invalid. *Manhattan Mut. Automobile Casualty Co. v. Fletcher,* 267 *App.Div.* 676, 48 *N.Y.S.2d* 517, *affirmed* 294 *N.Y.* 913, 63 *N.E.2d* 114; *Hassler v. Engberg,* 233 *Minn.* 487, 48 *N.W.2d* 343; *Phoenix Assur. Co. of*

*London v. Fire Department,* 117 *Ala.* 631, 23 *So.* 843, 42 *L.R.A.* 468; *Firemen's Benevolent Ass'n v. Lounsbury,* 21 *Ill.* 511, 74 *Am.Dec.* 115.

 The fact that the funds are earmarked and are continuing does not affect this situation. There does not necessarily have to be any relation between the classification of taxpayers and the purpose of the appropriation. *Hassler v. Engberg, supra.*

We think therefore that this question should be answered in the negative.